**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LAQUAN N. JAMES,

      Petitioner,                  Civil No. 05-70466
                                 HONORABLE GEORGE CARAM STEEH
v.                              UNITED STATES DISTRICT JUDGE

KENNETH McKEE,

      Respondent,

_____/

**OPINION AND ORDER DENYING PETITION**
**FOR WRIT OF HABEAS CORPUS**

      Laquan N. James, ("Petitioner"), presently confined at the Chippewa

Correctional Facility in Kincheloe, Michigan, has filed a petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  In his *pro se* application, petitioner

challenges his conviction for assault with intent to rob while armed, M.C.L.A.

750.89.  For the reasons stated below, the petition for writ of habeas corpus is

DENIED.

### I.  Background

      Petitioner was originally charged in a four count information with three

counts of assault with intent to rob while armed and one count of felony-firearm.

Petitioner was convicted by a jury in the Wayne County Circuit Court of one count

of assault with intent to rob while armed and acquitted of the remaining counts.

      On the first day of trial, prior to the jury being impaneled, petitioner's

counsel requested an adjournment because he had "some witnesses who were

1

lately identified who we were going to have a problem bringing back. They're out of state witnesses. We didn't have the addresses for those witnesses. Its still a problem. This is a capital case where identity is an issue and alibi is a potential defense." (Tr. 11/26/2001, p. 4). The judge denied the adjournment, because the trial date had been set in August, petitioner had bonded out that same month, and the judge ruled that was sufficient time to obtain the alibi witnesses. (*Id.* at p. 5). Defense counsel responded that he had been appointed as substitute counsel for petitioner only "about a month ago" and the prior attorney had filed an alibi notice but had not subpoenaed the alibi witnesses. The judge again denied the request for an adjournment. (*Id.*).

The prosecutor's theory of the case was that on July 19, 2000, at about 11:00 a.m. at Monica and Clarita Streets in the Detroit, Michigan, petitioner approached Phyllis Edwards, who was walking down the street, pulled out a handgun and demanded her jewelry. Before he obtained the jewelry, petitioner ran away. Petitioner was later arrested and his photo was selected by Phyllis Edwards from a photographic line-up which was conducted after petitioner refused to participate in a live or corporeal line-up. The defense theory of the case was that petitioner had been incorrectly identified as the robber.

Ms. Edwards testified that she was employed as a teacher at the Mayflower Headstart Center on the day of the assault. While taking her students for a walk, she noticed a man across the street. The man crossed the street and

2

began walking toward her, the two other adults, and the eleven children that were with her.  Edwards identified petitioner at the man she saw on the street. Edwards testified that petitioner pulled a bag out of his pocket, pulled a black gun out of the bag, and pointed the gun at the children and the adults.  Petitioner demanded that everyone give him their jewelry.   Everyone began screaming and they started walking.  When Edwards looked again, petitioner was gone.  The other two women testified to essentially the same facts, however, neither were able to identify petitioner as the robber.

The defense rested without calling any witnesses.

Following petitioner's conviction, petitioner moved for a new trial on the ground that he had been denied the effective assistance of counsel.  A *Ginther* hearing was conducted on February 13, 2003. [1]  The trial court judge subsequently denied petitioner's motion for a new trial. *People v. James,* No. 00-10802 (Wayne County Circuit Court, March 31, 2003).

Petitioner's conviction was affirmed on appeal. *People v. James,* No. 239993 (Mich.Ct.App. February 17, 2004); *lv. den.,* 471 Mich. 871; 685 N.W. 2d 670 (2004).

On February 5, 2005, petitioner filed a petition for writ of habeas corpus. On May 9, 2006, this Court entered an opinion and order granting petitioner's motion to hold his habeas petition in abeyance to permit petitioner to return to the

---

[1]  *People v. Ginther*, 390 Mich. 436, 443; 212 N.W. 2d 922 (1973).

3

state courts to exhaust additional claims. *James v. McKee,* No. 2006 WL 1284903 (E.D. Mich.  May 9, 2006).

Petitioner filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. seq.,* which the trial court denied. *People v. James,* No. 00-10802 (Wayne County Circuit Court, December 14, 2006).  The Michigan appellate courts denied petitioner leave to appeal. *People v. James,* No. 278116(Mich.Ct.App. August 20, 2007); *lv. den.* 480 Mich. 956, 741 N.W.2d 366 (2007).

This Court subsequently granted petitioner's motion to reopen the petition for writ of habeas corpus, permitted petitioner to file an amended habeas petition, and ordered the state to file a supplemental answer to the petition for writ of habeas corpus. *James v. McKee,* No. 2008 WL 183543 (E.D. Mich. January 17, 2008).

Petitioner now seeks habeas relief on the following grounds:

I. Trial counsel was ineffective in failing to properly investigate and subpoena the alibi witnesses for trial, the alibi notice having been filed by the prior attorney.

II. The prosecutor violated Mr. James' state and federal constitutional due process rights to a fair trial by deliberately and knowingly asking questions that elicited prejudicial other similar acts evidence.

III. The prosecutor violated Mr. James' state and federal constitutional due process rights to a fair trial when the trial court allowed the jury to hear evidence of crimes which he was not charged.

IV. Defendant was denied his VI and XIV Amendment constitutional

4

right to the effective assistance of counsel.

V. Defendant was denied effective assistance of appellate counsel in violation of the VI and XIV Amendment to the United States Constitution.

VI. Defendant has established entitlement to relief pursuant to MCR 6.508 (D)(3)(b)(I). [2]

## II.  Standard of Review

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of

state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

---

[2]  These last three claims were listed as petitioner's first, second, and third claims in his amended petition for writ of habeas corpus.  For the sake of judicial clarity, the Court will renumber these claims as petitioner's fourth, fifth, and sixth claims to avoid confusion with petitioner's first three claims that he raised in his original petition for writ of habeas corpus.

Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III.  Discussion

#### A.  Claim # 1.  The ineffective assistance of trial counsel claim.

Petitioner claims that his trial counsel was ineffective for failing to call several alibi witnesses on his behalf.

A *Ginther* hearing was conducted on petitioner's claim on February 13, 2003.

Petitioner's counsel, Lawrence Shulman, testified that he first spoke with petitioner between the 20th and 26th of October, prior to being formally assigned to the case.  Shulman was aware of petitioner's potential alibi defense when he received discovery and the documents filed by prior counsel, who had already filed a notice of alibi in the case. (*Ginther Hearing* Tr., pp. 5-7).  Shulman spoke with one of petitioner's alibi witnesses, Anna Powell, several times and with petitioner, asking both of them to have Mr. Ronald Jones, Sr. and Mr. Robert

6

Powell, the remaining two witnesses listed on the notice of alibi, speak to him.

Petitioner was living with Anna Powell at the time, through placement from the

Family Empowerment Institute.  Anna Powell had informed Shulman that Ronald

Jones, Sr. was her son and Robert Powell was her husband.  Shulman testified

that he had a number of communication problems that prevented him from

having conversations with either man before trial.  Shulman indicated that he set

up several appointments with petitioner to meet at his office to discuss the case,

but that petitioner never appeared.  Shulman also called Anna Powell and

informed her that the judge had set a firm trial date and that he needed to speak

with petitioner prior to trial.  Powell told Shulman she'd make arrangements for

petitioner to appear, but he never did.  When petitioner did not call Shulman

back, Shulman spoke to Anna Powell.  Powell informed Shulman that Jones and

her husband were on a work crew traveling through the Southern States doing

cement work, they were not by a phone, could not be reached, could not be back

in Michigan for trial, and asked whether the trial could be adjourned.  Shulman

testified that he tried without success to contact Jones and Mr. Powell through

telephone calls to Anna Powell, because he was aware that they all lived at the

same address. (*Id.* at pp. 7-8, 10-11, 14-16, 22-23).

Shulman testified that when he first spoke to petitioner, petitioner said he

wasn't around the area when the crime committed.  Shulman said more details

were given to him by petitioner on the day of trial that had not been given before.

7

Specifically, petitioner informed Shulman that he had been taken to a job in Plymouth to lay cement at a house and that there were people who were working with him.  As Shulman spoke with petitioner, it became obvious to him that some of the people mentioned to him by petitioner, a man named Rashawn, and Hosea Johnson, were not on the alibi notice.  Shulman further indicated that neither of these names had been given to either him or to his predecessor counsel.  Shulman indicated that the first day of trial was the first time he had heard these names mentioned to him.  Shulman was also given photos of people which were supposedly taken on the day of the offense, when petitioner was allegedly at the house in Plymouth.  Shulman testified that he did move for an adjournment of trial after receiving this new information, but the request was denied. (*Id.,* pp. 9-10, 12-13, 17-19).

Shulman testified that he did not call Anna Powell as an alibi witness, even though she was present at trial, because she indicated that she drove petitioner to Plymouth early in the morning, dropped him off at the work site, and picked him up in the late afternoon.  Powell, however, would have nothing to offer with respect to petitioner's whereabouts at the time of the crime. (*Id.* at pp. 20-21).

Daryl Carson was petitioner's first trial counsel.  Carson filed an alibi notice in this case after petitioner told her that he was not present when the crime was committed.  Carson spoke with Anna Powell, who informed her that

8

petitioner had been working at a job with her husband and possibly her son and pictures had been taken. Carson, however, never saw any of these pictures. Carson withdrew from the case because she was leaving private practice, but would have raised an alibi defense had she taken the case to trial. Carson admitted that she was never informed by anyone about other persons present at the job who could have been alibi witnesses, particularly a Rashawn Washington or a Hosea or Jose Johnson. Carson testified that if she had learned about these additional witnesses on day of trial, she would have requested an adjournment. Had an adjournment been denied, she would have gone ahead with case. When asked what she would have done if she never had an opportunity to talk with two of the three alibi witnesses because they failed to come to her office or answer her calls, Carson acknowledged: "It's hard to say what I would have done." (*Id.* at pp. 26-28).

Anna Powell testified that on July 19, 2000, she drove petitioner to Plymouth, Michigan in the morning to work with her son on the cement job. (*Id.* at pp. 31-32). When asked if she could get a copy of the contract of the cement job from her son to aid petitioner's defense, she replied that her son had told her that he'd fax her a copy but he was expecting to appear at trial because Carson indicated she would subpoena them. Powell admitted that she never gave the additional names of Hosea or Rashawn to Daryl Carson because she did not know them herself. Powell acknowledged that she dropped petitioner off at the

9

work site early in the morning and picked him up in the evening, so she was not present during the entire time that petitioner was purportedly at work.  Powell conceded that petitioner was not with her when the offense took place.  Powell also acknowledged that she could not recall exactly when she took the photographs, although she thought that it was on the 19th [of July]. (*Id.* at pp. 37-40).  Powell claimed that she told Shulman on the day of trial that her son lived in Alabama, but she could reach him by phone, and she could have given Shulman the phone number.  She denied telling Shulman that she did not know where the witnesses were.  Powell testified that Shulman never asked her for phone numbers, names, or anything.(*Id.* at pp. 41-42).

Anna Powell was present when petitioner spoke with Shulman over the telephone, but admits she could not hear what Shulman was saying to petitioner. Powell admitted that she did not know if petitioner told Shulman about the availability of her son Ronald or other persons before the trial date.  Powell conceded further that she did not hear petitioner tell Shulman about the names of the additional alibi witnesses prior to trial, stating that petitioner gave Shulman her son's name and "possibly" her husband's name. (*Id.* at pp. 43-45).

Ronald Jones, Sr. testified that he was doing a cement job in Plymouth between the 17th and the 22nd of July and that petitioner worked on the site with him. (*Id.* at pp. 47-8).  However, when asked what year this was, Jones said "I can't remember–2000? I can't remember.  I'm not trying to be funny." (*Id.* at p.

10

48).  Jones said he would have been willing to testify for petitioner at the time of
his trial. (*Id.* at p. 51).  Jones provided an affidavit for this case in November
2002.  Although the affidavit listed the names of people working at the site,
Jones admits that he left petitioner's last name blank because he did not know it
as of November 2002. (*Id.* at pp. 52-3).  Although Jones claims that he knew that
petitioner was with him on the date of the offense, he never asked who the
defense attorney was or who the police were, nor did he ever contact either the
police or petitioner's attorney to provide them with this information.  Jones did
not bring a copy of the contract from the Plymouth cement job with him. (*Id.* at
pp. 54-55).

Ronald Jones Jr. was the son of Robert Jones, Sr.  The witness testified
that petitioner worked with them at the construction job.  Jones, Jr. admitted that
he did not know the date of the job until he came to court.  Although he claims
that he would have testified at trial, Jones Jr. admitted that he never contacted
anyone to tell them petitioner was with them at the time of the attempted
robbery. (*Id.* at pp. 59-62).

Petitioner testified that he first told Shulman about the alibi defense when
he spoke to him over the telephone.  Petitioner admitted that when Shulman
called petitioner and asked him to come to his office, petitioner told Shulman that
he would meet him at the next court date.  At the court hearing where Shulman
was formally assigned, petitioner told Shulman about his alibi defense.

11

Petitioner acknowledged telling Shulman about Robert and Anna Powell, but not the other witnesses because he did not know them.  Petitioner admitted that he never gave the names of Jose Johnson or Rashawn to Shulman or to Ms. Carson. (*Id.* at pp. 63-68).

On March 13, 2003, the trial court denied petitioner's motion for a new trial.  The trial court found that petitioner had not advised counsel prior to trial where he was supposed to have been on the day of the charged offense.  Prior to that time he had only indicated to his attorney that he wasn't there.  The Court found that of the three alibi witnesses that petitioner revealed to counsel, only Mrs. Powell appeared for the trial.  The other two alleged witnesses were traveling and working in the southern United States and could not be reached by telephone.  The trial court further found that Ms. Powell had indicated to petitioner's counsel that those witnesses could not be at the trial.  The trial court further noted that Robert Powell did not even appear for the evidentiary hearing. The trial court further concluded that Ms. Powell's testimony indicated that she was not a true alibi witness, because she could not testify to petitioner's whereabouts at the time of the crime.  As to the two other purported alibi witnesses, Ronald Jones, Sr. and Ronald Jones, Jr., the trial court observed that neither of the men could testify to the precise date that petitioner was working with them, let alone the time of day.  Finally, the trial court found that petitioner's counsel had never been advised of the existence of the two other

12

potential alibi witnesses until the day of trial. *People v. James,* No. 00-10802, *

2-3 (Wayne County Circuit Court, March 31, 2003).

> The Michigan Court of Appeals rejected petitioner's claim on similar grounds:

> "After review of the record, we cannot conclude that the trial court abused its discretion in denying defendant's motion for a new trial on the ground that he was denied the effective assistance of counsel. We agree with the trial court that, because of defendant's failure to timely provide the necessary information regarding these alleged alibi witnesses, defense counsel's decision not to render an alibi defense was sound trial strategy. Defendant admitted at the *Ginther* hearing that he refused his counsel's request to attend a meeting at his office to discuss his case; instead, defendant chose just to appear in court at his scheduled hearings. Defendant further admitted that before trial was set to begin he advised his counsel of the names of three witnesses, that of his surrogate mother, her son, and her grandson, but did not give the names of two other potential witnesses who were allegedly at the job site where defendant claimed he was at the time the crime was committed.

> Defendant's trial counsel also testified at the *Ginther* hearing that defendant failed to attend several scheduled appointments at his office and that the only communication he had with defendant occurred at court. Defense counsel also testified that the extent of defendant's alibi initially was that he was not in the area of the crime at the time it was alleged to have occurred; however, on the day of trial, defendant's alibi included that he was working in Plymouth when the crime occurred. In light of defendant's failure to cooperate and participate in developing his own defense, we cannot conclude that his counsel's performance was deficient and will not second-guess his trial strategy." *James*, No. 239993, at * 2.

> In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States

Supreme Court set forth a two-pronged test for determining whether a habeas

petitioner has received the ineffective assistance of counsel. First, a petitioner

must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Id.* at 687.  Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a habeas petitioner must identify those acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance on the part of counsel. *See Gardner v. Kapture*, 261 F. Supp. 2d 793, 803-04 (E.D. Mich. 2003)(*quoting Strickland,* 466 U.S. at 690).  A reviewing court's scrutiny of counsel's performance is highly deferential. *Strickland,* 466 U.S. at 689.  Counsel is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a habeas petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Gardner,* 261 F. Supp. 2d at 804 (*quoting Strickland,* 466 U.S. at 694).  A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.*

In the present case, the Michigan Court of Appeals' rejection of petitioner's

14

ineffective assistance of counsel claim was reasonable.  First, petitioner is unable to show that he was denied effective assistance of counsel based on counsel's failure to call potential alibi witnesses, in light of the fact that counsel made conscientious efforts to confer with his client but petitioner, by his own admission, refused to meet with counsel at his office prior to trial to discuss his case. *See Caldwell v. U.S.,* 651 F.2d 429, 432 (6th Cir. 1981)*.*

Secondly, counsel made several telephone calls to Anna Powell, in an attempt to speak with her husband and her son.  Powell informed counsel that her husband and son were on a work crew traveling through the South doing cement work, they were not by a phone, could not be reached, and could not be back for trial.  There is no indication that Robert Powell or Ronald Jones, Sr. ever attempted to contact petitioner's counsel to discuss their proposed testimony, let alone indicate a willingness to come to court and testify.  Trial counsel is not ineffective for failing to call as alibi witnesses persons who are unavailable or who refuse to cooperate with counsel. *See Coe v. Bell,* 161 F.3d 320, 342 (6th Cir. 1998).  Although Anna Powell disputed the extent to which counsel had made attempts to contact either her or petitioner, the trial court obviously credited counsel's testimony in this regard when denying petitioner's claim.  Although the issue of ineffective assistance of counsel presents a mixed question of law and fact, any underlying historical facts found by the state courts are presumed correct. *West v. Seabold*, 73 F. 3d 81, 84 (6th Cir. 1996).  The

15

presumption of correctness also "applies to implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *Carey v. Myers*, 74 Fed. Appx. 445, 448 (6th Cir. 2003) (citing *McQueen v. Scroggy*, 99 F. 3d 1302, 1310 (6th Cir. 1996)). Because the trial court and the Michigan Court of Appeals both chose to credit counsel's version of events in rejecting petitioner's ineffective assistance of counsel claim, this Court is bound by that factual determination.

Third, petitioner admits that he only gave the names of additional witnesses to counsel on the morning of trial. These individuals had not previously been mentioned to either petitioner's first or second counsel. Moreover, there was no testimony at the *Ginther* hearing that Ronald Jones, Jr. was ever mentioned to counsel at all. Counsel is not ineffective for failing to call an alibi witness who was never mentioned to him by his client. *See Johnson v. Loftus,* 518 F. 3d 453, 458 (7th Cir. 2008).

Fourth, once counsel learned of the identity of these new alleged alibi witnesses, as well as the fact that Robert Powell and Ronald Jones, Sr. would be unable to appear for trial, counsel requested an adjournment of the trial to secure the presence of these alibi witnesses, which was denied. Because counsel requested an adjournment of the trial to secure the presence of these witnesses, petitioner has failed to show that counsel was ineffective. *See McMiller v. Lockhart,* 915 F. 2d 368, 371 (8th Cir. 1990).

16

Fifth, assuming that counsel was deficient in his handling of petitioner's various alleged alibi witnesses, he is unable to establish that he was prejudiced by counsel's failure to call any of these witnesses to testify.  With respect to Anna Powell, this witness admitted that although she dropped petitioner off at the work site on the day in question and later picked him up, she could not account for his whereabouts during the day.  Petitioner was not denied effective assistance as result of trial counsel's failure to call Anna Powell as an alibi witness, where there was a window of time for petitioner to have committed the attempted robbery between the times during which she could account for petitioner. *See Fargo v. Phillips,* 58 Fed. Appx. 603, 607-08 (6th Cir. 2003).  With regard to Ronald Jones, Sr. and Ronald Jones, Jr. neither man could remember the exact date, let alone year, that petitioner was present with them at the work site, nor could Anna Powell provide any evidence to corroborate the date, in light of the fact that she was unsure on which day she took the pictures of the various individuals at the work site.  In light of the fact that neither man could specifically recall the exact date that petitioner was with them, counsel was not ineffective for failing to call them as alibi witnesses. *See Meeks v. McKune,* 607 F. Supp. 2d 1235, 1248 (D. Kan. 2009).

Finally, as the state trial court noted, petitioner failed to call the remaining proposed alibi witnessses, including Robert Powell, to testify at the *Ginther* hearing.  Petitioner has offered, neither to the Michigan courts or to this Court,

17

any evidence beyond his own assertions as to what these remaining alibi witnessses' testimony would have been.  In the absence of such proof, petitioner is unable to establish that he was prejudiced by counsel's failure to call these witnesses to testify at trial, so as to support his ineffective assistance of counsel claim. *See Clark v. Waller,* 490 3d 551*,* 557 (6th Cir. 2007).  Because these purported alibi witnesses did not testify at the *Ginther* hearing, this Court may not hold an evidentiary hearing to permit petitioner the opportunity to develop what their testimony would have been because he "failed" to develop the evidentiary support for this claim in state court, as required by 28 U.S.C. § 2254(e)(2). *See Williamson v. Raney*, 157 F. Supp. 2d 880, 891 (W.D. Tenn. 2001).  Petitioner is not entitled to habeas relief on his first claim.

### B. Claims # 2 and # 3.  The prosecutorial misconduct claims.

The Court will discuss petitioner's second and third claims together because they are interrelated.  In his second claim, petitioner alleges that the prosecution introduced evidence of other robberies that had occured in the area where the attempted robbery that petitioner was charged with occurred, in violation of M.R.E. 404(b).  In his third claim, petitioner contends that the admission of this evidence was irrelevant.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  A federal court is limited in federal habeas review to deciding whether a

18

state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

Petitioner's claim that the state court violated M.R.E. 404(b) by admitting this evidence is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F 3d 514, 519 (6th Cir. 2007). The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003); *Adams v. Smith,* 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Likewise, petitioner's claim that this evidence was irrelevant does not raise due process issues of constitutional magnitude or entitle him to habeas corpus relief. *See Oliphant v. Koehler*, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978). Petitioner is not entitled to habeas relief on his second and third claims.

**C. Claims ## 4, 5, and 6. Petitioner's remaining ineffective assistance of trial and appellate counsel claims.**

Respondent contends that petitioner's remaining claims are procedurally defaulted because petitioner raised these claims for the first time in his post-conviction motion and failed to show cause and prejudice for failing to raise

19

these claims in his appeal of right, as required by M.C.R. 6.508(D)(3).

M.C.R. 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.

Petitioner raised his remaining claims for the first time with the state courts on post-conviction review. [3] Both the Michigan Court of Appeals and the Michigan Supreme Court denied petitioner's post-conviction appeals pursuant to M.C.R. 6.508(D).

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a habeas petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue.

---

[3] Petitioner's fourth claim alleges various instances of ineffective assistance of trial counsel. Although petitioner's appellate counsel raised the claim on direct appeal that counsel was ineffective for failing to present alibi witnesses, she did not raise any of the ineffective assistance of counsel claims raised by petitioner in his fourth claim. Because the ineffective assistance of counsel claims raised by petitioner in his fourth claim are different than the ineffective assistance of counsel claim presented during petitioner's direct appeals process, these claims were not fairly presented to the state courts as part of the direct appeal process. *See Caver v. Straub,* 349 F. 3d 340, 346-47 (6th Cir. 2003)(*citing to Pillette v. Foltz,* 824 F. 2d 494, 497 (6th Cir. 1987)). In light of the fact that petitioner alleges that his appellate counsel was ineffective for failing to raise these ineffective assistance of counsel claims on appeal, he basically admits that these claims were raised for the first time on post-conviction review.

*Smith v. Murray*, 477 U.S. 527, 533 (1986).  However, in an extraordinary case,

where a constitutional error has probably resulted in the conviction of one who is

actually innocent, a federal court may consider the constitutional claims

presented even in the absence of a showing of cause for procedural default.

*Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  However, to be credible, such a

claim of innocence requires a petitioner to support the allegations of

constitutional error with new reliable evidence that was not presented at trial.

*Schlup v. Delo*, 513 U.S. 298, 324 (1995).  Actual innocence, which would permit

collateral review of a procedurally defaulted claim, means factual innocence, not

mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In the present case, the Michigan Supreme Court, the last court to rule on

petitioner's post-conviction motion, invoked M.C.R. 6.508(D) to deny petitioner's

claims.  The Michigan Supreme Court's decision, while brief, was based upon an

independent and adequate state procedural rule so as to constitute a procedural

default of the claims. *See Simpson v. Jones*, 238 F. 3d 399, 407 (6th Cir.

2000)(Michigan Supreme Court's citation to MCR 6.508(D) to deny relief

constitutes a reasoned decision invoking a procedural bar); *see also Burroughs

v. Makowski,* 282 F. 3d 410, 414 (6th Cir. 2002)(same); *Alexander v. Smith*, 311

Fed. Appx. 875, 883-84 (6th Cir. 2009)(confirming that *Simpson* and *Burrough*

are binding precedent, therefore, the Michigan Supreme Court's invocation of

6.508(D) was sufficient to constitute a procedural default of petitioner's claims).

Petitioner's fourth claim is procedurally defaulted.

Petitioner further alleges in his fifth and sixth claims that appellate counsel's ineffectiveness in failing to raise the additional ineffective assistance of counsel claims contained in petitioner's fourth claim on his appeal of right constitutes adequate cause to excuse his procedural default.  Petitioner, however, has not shown that appellate counsel was ineffective.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 754 (1983).  The United States Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard."

*Id.* at 754.

Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 753 (citations omitted).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  "Generally, only when ignored issues

are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F. 3d 568, 579 (6th Cir. 2002)(internal quotations omitted).  Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003)(internal citations omitted).

Petitioner has failed to show that by omitting the claims presented in his post-conviction motion for relief from judgment appellate counsel's performance fell outside the wide range of professionally competent assistance.  Appellate counsel filed an appeal brief which raised three claims on direct appeal. Appellate counsel also successfully moved for a *Ginther* hearing on the ineffective assistance of counsel claim involving counsel's failure to call alibi witnesses on petitioner's behalf.  Petitioner has not shown that appellate counsel's strategy in presenting such claims and not raising other claims was deficient or unreasonable so as to amount to cause that would excuse any default. *See Grant v. Rivers,* 920 F. Supp. 769, 782 (E.D. Mich. 1996). Moreover, because the defaulted claims are not "dead bang winners", petitioner has failed to establish cause for his procedural default of failing to raise all of his claims on direct review. *See McMeans v. Brigano,* 228 F. 3d 674, 682-83 (6th Cir. 2000); *Meade,* 265 F. Supp. 2d at 872.

This Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. at 533; *Harris v. Stegall,* 157 F. Supp. 2d 743, 750 (E.D. Mich. 2001). Additionally, petitioner has not established that a fundamental miscarriage of justice has occurred.  The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup,* 513 U.S. at 326-27.  Although petitioner claims that he has an alibi to the crime, for the reasons stated by the Court in rejecting petitioner's first claim, the alibi evidence that was presented by petitioner to both this Court and the state courts was not so compelling or exceptional, so as to establish petitioner's actual innocence of the crime to excuse his default. *See Hutson v. Diguglielmo,* 262 Fed.Appx. 474, 476 (3rd Cir. 2008).  Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review petitioner's fourth claim on the merits. *Harris,* 157 F. Supp. 2d at 751.

Finally, assuming that petitioner had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief.  The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F. 3d 883, 891 (6th Cir. 2007).   For the reasons stated by the Wayne County Circuit Court in denying petitioner's post-conviction

24

motion, petitioner has failed to show that his remaining ineffective assistance of trial counsel claims have any merit.  Petitioner's claims are thus barred by procedural default and do not warrant relief.

Finally, this Court is aware that petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Hicks v. Straub*, 377 F. 3d 538, 558, n. 17 (6th Cir. 2004); *Johnson v. Warren,* 344 F. Supp. 2d 1801, 1089, n. 1 (E.D. Mich. 2004).  For the reasons that follow, however, habeas relief is not warranted on such a claim.

This Court has already concluded that petitioner has failed to show that appellate counsel was deficient in failing to raise the ineffective assistance of trial counsel claims contained in petitioner's fourth claim on appeal.  Moreover, petitioner is unable to show that he was prejudiced by appellate counsel's failure to raise these claims, in light of the fact that these same claims were presented to the Michigan trial and appellate courts on petitioner's post-conviction motion for relief from judgment and rejected by them. *See Hollin v. Sowders*, 710 F. 2d 264, 265-67 (6th Cir. 1983); *Johnson,* 344 F. Supp. 2d at 1096; *Bair v. Phillips,* 106 F. Supp. 2d 934, 938, 943 (E.D. Mich. 2000).  The state courts' rulings on petitioner's motion for post-conviction relief granted petitioner an adequate substitute for direct appellate review and therefore his attorney's failure to raise these claims on the appeal of right did not cause him any injury. *Bair,* 106 F.

25

Supp. 2d at 943.  There is no point in remanding this case to the state courts to reconsider a case that they have already adversely decided. *Gardner v. Ponte*, 817 F. 2d 183, 189 (1st Cir. 1987).

### IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.*  Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was

26

correct in its procedural ruling. *Id.* at 484.  When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.*

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right.  Jurists of reason would not find this Court's resolution of petitioner's claims to be debatable or that they should receive encouragement to proceed further. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001).  The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

Dated:  November 3, 2009

<u>S/George Caram Steeh</u>
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

27

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
November 3, 2009, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk